**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
**CIVIL ACTION NO. 3:23-CV-607-JHM**

**JIMMY YOKELY**                                                                                     **PLAINTIFF**

**v.**

**JOSE RODRIGUEZ,** *et al.*                                                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion for summary judgment and/or to dismiss the complaint for failure to state a claim and corresponding motion to seal filed by Defendants Jose Rodriguez, Dexter Tharp, and Scott Grimes (collectively, Defendants). (DNs 17, 18). Plaintiff Jimmy Yokely has filed a response to the motion for summary judgment (DN 22), to which Defendants have replied. (DN 24). For the following reasons, Defendants' motions will be granted.

**I**.

Plaintiff, a convicted inmate, brings this *pro se* action pursuant to 28 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his safety in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (DN 1). The complained-of events occurred during a period of incarceration at the Roederer Correctional Complex (RCC). (*Id*., PageID.4).

Plaintiff's complaint alleges that on September 7, 2023, he was found in possession of suboxone strips, after which he was held in the Identification (ID) Department and later moved to a different unit from which he was housed. (*Id*.). After being placed in the new housing unit, Plaintiff claims he was "approached by several inmates who wanted the drugs, they thought was

still in my possession. I informed them that Internal Affairs took the drugs and I had no more. I was threatened with physical violence . . . ." (*Id*.).

Plaintiff alleges that on September 8, 2023, he informed Defendant Tharp that he was "being threatened over the drugs taken by IA [Internal Affairs], and I needed to talk to Internal Affairs Rodriguez, because Rodriguez would understand the situation." (*Id*.). Plaintiff claims that Tharp agreed to move him to another unit for his safety. However, "[o]ver the course of this weekend 9/9/23 to 9/10/23, I spoke to the sergeant working the unit about IA moving me, and ask if he would check into the matter. I was still not moved to another wing." (*Id*.)

Plaintiff alleges that on September 11, 2023, he again spoke with Tharp "because the urgency of the matter was about to get out of hand." (*Id.*). Later that night, Plaintiff was sexually assaulted in the shower by two inmates. (*Id.*). He alleges that the assault "was confirmed and substantiated by the DOC Medical Depart[ment], and PREA Coordinator . . . ." (*Id*.). Upon reporting the assault, Plaintiff was relocated to another unit. However, "inmates started to claim I informed on others, and the situation got worse." (*Id*., PageID.5). At that time, "Mr. Grimes deemed I needed to be transferred from RCC to another DOC facility." (*Id*.).

Plaintiff claims that on September 28, 2023, he was transferred to Luther Luckett Correctional Complex (LLCC), where he filed a grievance. He alleges that the individual Defendants are liable for negligence and deliberate indifference to his health and safety. (*Id*.).

**II.**

Defendants now move for summary judgment and/or to dismiss the complaint on the following grounds: (1) Plaintiff did not exhaust his administrative remedies; (2) Plaintiff fails to state a claim against Defendants Grimes and Rodriguez, and there is no genuine issue of material fact for the Eighth Amendment claim against them; (3) there is no genuine issue of material fact

for the Eighth Amendment claim against Defendant Tharp; (4) all Defendants are entitled to qualified immunity; and (5) there is no genuine issue of material fact for the negligence claim against the Defendants. (DN 17-1, PageID.68-78).

In support of their motion for summary judgment, Defendants submit the following evidence: Incident Report dated September 8, 2023; sworn affidavits of Defendants Rodriguez, Tharp, and Grimes; printout of RCC's Bed Assignment screen; and Kentucky Corrections Policies and Procedures (CPP) Policy 14.6 (Inmate Grievance Procedure). (DNs 17-2 to 17-9).

In Plaintiff's response to the motion for summary judgment, he argues that a genuine issue of material fact exists as to his Eighth Amendment claim against Rodriguez, and as to the negligence claims against Tharp and Grimes. (DN 22, PageID.135-37). He also avers that he attempted to exhaust his administrative remedies. (*Id*., PageID.137). As evidence, Plaintiff attaches a sworn affidavit; portions of the Defendants answer to the complaint; and an excerpt of CPP 14.6 (Inmate Grievance Procedure). (DN 22-1).

In their reply, Defendants restate the arguments in their initial memorandum of law and submit a sworn affidavit by RCC Grievance Coordinator Holly Rothman. (DNs 24 to 24-1).

**III.**

**A.**

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th

3

Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall,* 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

In resolving motions to dismiss, a court may consider the well-pled factual allegations in the complaint, exhibits attached to or incorporated by reference into the complaint, matters of public record, and records of which the Court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

**B.**

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require lenient treatment of substantive law . . . , and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

### IV.

### A.

Defendants seek dismissal of Plaintiff's failure to protect claim against them on the basis that he failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). (DN 17-1, PageID.68-69). Because the parties rely on matters outside the pleadings, the Court will review the facts under the summary judgment standard of review. Fed. R. Civ. P. 12(d).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is

no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Failure to exhaust administrative remedies under the PLRA is an affirmative defense for which defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Accordingly, summary judgment may be granted "'only if defendants establish the absence of a "genuine dispute as to any material fact" regarding non-exhaustion.'" *Id.* at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). Because defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455–56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). The burden of a defendant asserting the affirmative defense of exhaustion is satisfied where the defendants produce an administrative policy that governs the filing of grievances and show that the plaintiff failed to fully exhaust his administrative remedies pursuant to the policy. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

To meet the exhaustion requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford*, 548 U.S. at 93-94. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Prisoners must "complete the administrative review process in accordance with the applicable procedural rules[.]" *Woodford*, 548 U.S. at 88. "Compliance with prison grievance

6

procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

Defendants assert that Plaintiff did not exhaust his administrative remedies because he did not timely file a grievance regarding his safety concerns in accordance with RCC's established grievance procedures. (DN 17-1, PageID.68). To that end, they produce CPP 14.6, the Inmate Grievance Procedure, which, in pertinent part, provides that "[g]rievances involving unfair or discriminatory treatment, safety, or sanitation in medical, dental or mental health care services shall be considered in this inmate grievance process." (DN 17-9, PageID.101). Moreover, "[a] grievance about a personal and specific incident shall be filed within five (5) business days after the incident occurs." (*Id.*). CPP 14.6(II)(B) and (C) set forth grievable and non-grievable issues. (DN 17-9, PageID.95). A grievable issue "shall include any aspect of an inmate's life in prison that is not specifically identified as a non-grievable issue." (*Id.*). Issues listed as "grievable" include personal and social services needs and personal actions by staff. (*Id.*).

Defendants also produce the affidavit of Holly Rothman, Grievance Coordinator at RCC. Therein, Rothman explains that CPP 14.6 defines a Grievance Coordinator as a "staff person appointed by the Warden to monitor and regulate the operation of the inmate grievance procedure." (DN 24-1; *see also* DN 17-9, PageID.94). In contrast, a "Grievance Aide is an inmate appointed to assist fellow inmates with filing a grievance." (*Id.*). Rothman attests that a Grievance Aide

7

does not have the authority to stop a grievance from being filed. (*Id.*). Rather, it is the Grievance Coordinator who determines whether an issue is non-grievable after a grievance is filed. If a grievance is rejected, the inmate is provided notice of the rejected grievance and the reasons therefor. (*Id.*).

Plaintiff, by sworn affidavit, responds to Defendants' assertion of non-exhaustion:

> I tried to file a grievance at R.C.C. where the incident occurred, on 9-8-23. The grievance aid said I could not file it, because they said P.R.E.A. was not grievable. So that's why I never filed the grievance at R.C.C. So I filed the grievance at L.L.C.C. after I received the paper that was given to me substantiating the P.R.E.A. Then I filed the grievance within 5 days of receiving that paper.

(DN 22-1, PageID.141-42). He cites to CPP 14.6.(II)(C)(13), which states that PREA investigation findings are non-grievable matters. (DN 22-2, PageID.144). Plaintiff also submits a copy of the LLCC grievance filed on October 10, 2023. (DN 1-1, PageID.9-12).

On the present record, it is undisputed that Plaintiff did not file a timely grievance regarding Defendants' alleged failure to protect him from harm at RCC. Instead, Plaintiff filed a grievance on this issue after his transfer to LLCC on October 10, 2023, nearly one month after the Defendants' alleged failure to respond to his concerns of threats by other inmates at RCC. A Notice of Grievance Rejection from LLCC indicates that Plaintiff's grievance was not processed because "[t]he grievance was not filed within five days of the alleged incident." (DN 1-1, PageID.9). "[B]ecause '[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules,' the inmate must strictly follow the jail's rules with respect to the timelines, form, and procedures for inmate grievances." *Hammond v. Quintana*, No. CV 5:20-315-KKC, 2020 WL 4353559, at *3 (E.D. Ky. July 29, 2020) (quoting *Woodford*, 548 U.S. at 90). As such, Plaintiff's belated grievance is not sufficient to exhaust his administrative remedies. *Scott*

8

*v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) ("[A] prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance.").

Liberally construed, Plaintiff appears to argue that administrative remedies were unavailable to him at RCC because he was told by a Grievance Aide that PREA investigation findings are not grievable. (DN 22, PageID.137; DN 22-1, PageID.141-42). Plaintiff's argument is misplaced.

While Plaintiff is correct in his assertion that CPP 14.6 provides that PREA investigation findings are not grievable under the Inmate Grievance Procedure, he presents no evidence that the grievance process was unavailable to him to redress the wrongdoing alleged in his complaint, *i.e.*, the Defendants' failure to protect him from inmate harm. CPP 14.6(II)(J) provides that "grievances involving unfair or discriminatory treatment, *safety*, or sanitation in medical, dental or mental health care services shall be considered in this inmate grievance process." (DN 17-9, PageID.101) (emphasis added). Additionally, among the list of "grievable issues" are personal and social services needs and personal actions by staff. (*Id.*, PageID.95). Thus, while Plaintiff could not grieve the PREA investigation results per CPP 14.6,[1] he could have, within five days, grieved his safety concerns, including the Defendants' inaction in relocating him. There is no evidence before the Court to suggest that plaintiff was prevented from doing so. (DN 17-9, PageID.101).

Insofar as Plaintiff: (a) mistakenly conflated his PREA matter with concerns over his protection, or (b) erroneously believed that his safety and security concerns were non-grievable, this does not render the grievance procedure unavailable to him. *See generally*, *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222-25 (6th Cir. 2011) (holding that exhaustion is required even if the

---

[1] While not the central issue on the present motion, the Court notes that a PREA report and investigation was completed in this case, substantiating Plaintiff's claim of assault. (DN 1-1, PageID.13).

inmate subjectively believes the remedy is not available, the state cannot grant the particular relief requested, or the inmate believes the procedure to be ineffectual or futile); *Dudley v. Strough*, No. 3:21-CV-P10-DJH, 2022 WL 479099, at *6 (W.D. Ky. Feb. 16, 2022) ("Plaintiff's subjective belief that the issues were non-grievable does not excuse his failure to exhaust.").

To the extent that Plaintiff seeks to argue that the grievance process was unavailable to him based on statements made to him by a Grievance Aide, "[n]either a grievance aide's legal conclusion that a claim is non-grievable, whether right or wrong, or the failure or refusal to provide a grievance form to the inmate . . . excuses an inmate's statutory obligation to exhaust administrative remedies." *Sublett v. Green*, No. CIV. 0:14-32-HRW, 2014 WL 4782964, at *1, n.1 (E.D. Ky. Sept. 24, 2014), *aff'd* (July 14, 2015).

For these reasons, the Court finds that Defendants have met their burden of showing that Plaintiff failed to exhaust his administrative remedies before filing suit and that Plaintiff has failed to establish the existence of a genuine issue of material fact on the issue of exhaustion. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's Eighth Amendment claim against them, and this claim is dismissed.

**B.**

Having dismissed Plaintiff's Eighth Amendment claim, the Court declines to exercise supplemental jurisdiction over his negligence claim arising under state law. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim" in situations when "the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). Accordingly, the Court will also dismiss Plaintiff's state law claim as to all Defendants.

## C.

Finally, Defendants have also moved to file under seal two exhibits filed in support of their motion for summary judgment, which contain audio recordings of conversations between Plaintiff and RCC officials regarding his involvement in drug trafficking and his PREA investigation.[2] (DN 18). Defendants indicate that disclosure of the recordings' content could compromise institutional security and result in potential harm to Plaintiff. Upon consideration, this motion (DN 18) is granted.

## V.

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (DN 17) and motion to seal (DN 18) are **GRANTED**. The Defendants' motion to dismiss (DN 17) is **DENIED as moot**. The Court will enter a separate Judgment dismissing the action.

Date: August 19, 2025

*Joseph H. McKinley Jr., Senior Judge*
United States District Court

cc: Plaintiff, *pro se*
    Counsel of record
4414.015

---

[2] While it appears that Defendants did not produce the audio exhibits to Plaintiff during discovery, this evidence is not germane to the Court's analysis set forth above and does not affect the resolution of the instant motion.

11